UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HOOKE,<br>   Plaintiff,<br>v.<br>FOSS MARITIME COMPANY,<br>   Defendant. | Case No. 13-cv-00994-JCS<br><br>**DISCOVERY ORDER**<br>Re: Dkt. Nos. 29, 33, 35 |

## I.   INTRODUCTION

This discovery dispute arises in an action brought under the Jones Act and general maritime law, in which Plaintiff Thomas Hooke alleges that he suffered injuries on September 5, 2011 during the course of his employment with Defendant Foss Maritime Company. *See* Compl. ¶¶ 7–22. On January 28, 2014, the parties submitted a joint letter on several discovery disputes. *See* Dkt. No. 29. The Court ordered supplemental briefing, including any relevant evidence, on the issue of whether Defendant's Internal Incident Investigation Report ("Incident Report"), Event Information System ("EIS") Report, and EIS Report Witness Statements are protected by the attorney work product privilege. *See* Dkt. No. 32. Defendant timely filed a brief on the issue and, several days later, filed a supporting declaration. *See* Dkt. No. 33 ("Def.'s Br."); Decl. of Frank Williamson in Supp. of Def.'s Br. ("Williamson Decl."). Plaintiff timely responded with a brief and a supporting declaration. *See* Dkt. No. 35 ("Pl.'s Br."); Decl. of John Hillsman in Supp. of Pl.'s Br. ("Hillsman Decl."). For the reasons explained below, the Court orders that the disputed documents be produced within seven days of this Order.

## II.   DISCUSSION

At issue are several documents that Defendant has identified as responsive to Plaintiff's

1  requests for production, but which Defendant has withheld on the basis of privilege. *See* Hillsman
2  Decl. Ex. 1 ("Privilege Log"). The disputed documents, all pertaining to Plaintiff's September 5,
3  2011 incident, are the following: (1) Incident Report dated September 8, 2011, (2) EIS Report
4  dated September 6, 2011, and (3) EIS Report Witness Statements from Don Nichols, Mark
5  LaCroix, and Eric Partika, dated September 5 and 6, 2011. *See id.* Presently before the Court is the
6  issue of whether Defendant has appropriately withheld these documents on the basis of the
7  attorney work product doctrine.

### A.   Attorney Work Product Doctrine

The work product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, and it protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." *See In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004)). The work product doctrine exists because "[p]roper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Recognizing the "realities" of modern litigation, the Supreme Court has observed that the doctrine protects material prepared by agents for the attorney as well as material prepared by the attorney directly. *In re Grand Jury Subpoena*, 357 F.3d at 907 (quoting *United States v. Nobles*, 422 U.S. 225, 239 (1975)). The party asserting the work product doctrine has the burden of establishing its application to each document. *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, C07-1359 PJH (JL), 2008 WL 5214330, at *3 (N.D. Cal. Dec. 12, 2008) (citing *Heath v. F/V Zolotoi*, 221 F.R.D. 545, 549 (W.D. Wash. 2004)).

The Ninth Circuit has adopted the "because of" standard for determining whether a document was prepared "in anticipation of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 907. That is,

> a document should be deemed prepared "in anticipation of litigation" and thus eligible for work product protection under Rule 26(b)(3) if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of

> litigation." 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, Fed. Practice & Proc. § 2024 (2d ed. 1994) . . . The "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document. Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]" [*United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)].

*Id.* at 907–908. In making this "totality of the circumstances" inquiry, courts must grapple with circumstances where documents were created for dual purposes, *e.g.*, both litigation and business purposes. "When there is a true independent purpose for creating a document, work product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated." *Id.* at 908. However, "[d]ocuments prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation are not protectable as work product." *Arfa v. Zionist Org. of Am.*, CV 13-2942 ABC SS, 2014 WL 815496, at *4 (C.D. Cal. Mar. 3, 2014) (quoting *Umpqua Bank v. First American Title Ins. Co.*, 2011 WL 997212, at *4 (E.D. Cal. Mar.17, 2011)). Specifically, "[m]aterials or investigative reports developed in the ordinary course of business do not rise to the status of work product." *Caremark, Inc. v. Affiliated Computer Servs., Inc.*, 195 F.R.D. 610, 614 (N.D. Ill. 2000). A party asserting the privilege for incident reports should show that the reports "were prepared at the specific direction of counsel in anticipation of litigation rather than pursuant to a general protocol or course of business established by defendant." *See Fisher v. Kohl's Dep't Stores, Inc.*, 2:11-CV-3396 JAM GGH, 2012 WL 2377200, at *6 (E.D. Cal. June 22, 2012).

     Even if certain materials qualify as work product, they may still be discovered under certain circumstances. There are two types of work product, which entail two different standards for discovery. *See Arfa*, 2014 WL 815496, at *4. "Ordinary" work product includes "raw factual information" while "opinion" work product includes "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 628 (N.D. Iowa 2000); Fed. R. Civ. P. 26(b)(3)(B)); *Caremark*, 195 F.R.D. at 616. Ordinary work product may be discovered

3

1 if the party seeking the discovery demonstrates a "substantial need" for the materials and there is
2 no other means for obtaining that information without undue hardship. Fed. R. Civ. P. 26(b)(3);
3 *Hickman*, 329 U.S. at 511. In contrast, opinion work product enjoys stronger protection, and it
4 may be discovered only "when mental impressions are at issue in a case and the need for the
5 material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.
6 1992) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 401–02 (1981)) ("A party seeking
7 opinion work product must make a showing beyond the substantial need/undue hardship test
8 required under Rule 26(b)(3) for non-opinion work product.").

### B. Analysis

The Incident Report, the EIS Report, and the EIS Report Witness Statements are not attorney work product because they were not "prepared in anticipation of litigation." *See* Fed. R. Civ. P. 26(b)(3). Even if the Court were to find that these materials qualified as work product, the record shows that they could only qualify as ordinary work product, and Plaintiff has demonstrated the requisite "substantial need" for the materials. *See id.*

#### 1. Anticipation of litigation

Defendant argues that the materials at issue were prepared in anticipation of litigation and protected by the work product privilege. Plaintiff counters that the materials were prepared in the ordinary course of business and would have been prepared regardless of any litigation.

Plaintiff is correct. Defendant's Safety Management System ("SMS") Manual requires that an Internal Incident Investigation Report and an EIS Report are created after every incident, unless the incident is minor or insufficiently related to employment with the Defendant. *See* Hillsman Decl. Ex. 2 at 2 ("SMS Manual"); Def.'s Br. at 5 ("employees are required to complete an investigation report and submit it to the Claims Department after any significant personal injury"). Further, company policy requires witnesses to make EIS Witness Statements by filling out pre-printed forms as part of standard operating procedure. *See* Hillsman Decl. Ex. 3 at 26:19–27:6 ("Dep. of Mark LaCroix"), Ex. 4 at 22:7–23:7 ("Dep. of Don Nichols"), Ex. 5 at 38:19–40:12 ("Dep. of Eric Partika").

Defendant argues that the documents are privileged because "litigation is an imminent

1  possibility in all these situations [of personal injury or property damage] and . . . the Claims
2  Department's sole purpose is to handle and investigate such claims." Def.'s Br. at 5. Defendant
3  supports its argument with testimony from its then-General Counsel that the investigation
4  process—*i.e.*, the EIS process—was developed under his direction "in large part due to the
5  widespread prevalence of litigation in the maritime industry." Williamson Decl. ¶ 2. The former
6  General Counsel further testifies that

> [b]ecause the workers' compensation regime does not govern maritime employee injuries, some of the personal injury incidents reported to the Claims Department result in litigation. [Defendant] investigates all significant accidents with the assumption that there will be resulting litigation.

11 *Id.* ¶ 6. The former General Counsel also testifies that the "initial EIS report" contains only a
12 "factual description" but it is forwarded as a matter of course to the General Counsel and the
13 Claims Department. *Id.* ¶ 3. The former General Counsel also testifies that the SMS Manual
14 requires that "[a]ll incidents be investigated at the direction of [Defendant's] General Counsel, in
15 anticipation of litigation and protected by the attorney client privilege and work product
16 doctrines." *Id.* ¶ 4. However, no citation to the SMS Manual is included. The former General
17 Counsel also testifies that EIS Report Witness Statements are prepared at the direction of the
18 General Counsel." *Id.* ¶ 5. The former General Counsel also testifies that when Defendant
19 "believes that litigation is likely to be initiated, we submit the Internal [Incident] Investigation
20 Reports to our outside counsel to assist with the litigation efforts." *Id.* ¶ 6.
21     This evidence might be sufficient to indicate that there is a "dual purpose" for the creation
22 of the documents at issue, such that the "totality of the circumstances" test becomes more
23 complicated. *See In re Grand Jury Subpoena*, 357 F.3d at 908. However, the record also indicates
24 that there is a "true independent purpose for creating" these documents, which "makes work
25 product protection is less likely." *See id.* Specifically, the record reveals that any litigation purpose
26 is eclipsed by the "true independent purpose" of fostering the safety of Defendant's operations.
27 The SMS Manual explains that the EIS system "is an essential program that helps create a safe
28 operating environment for [Defendant] by fostering a process to understand what happened in an

1    incident, why it happened and how to prevent it from occurring again." SMS Manual at 2. It also
2    provides that "[t]he most valuable aspect of doing the investigations is the corrective actions and
3    lessons learned that can be gleaned from the incident." *Id.* at 3. While the SMS Manual does note
4    that an EIS Report should be sent to Defendant's claims department and Defendant's insurer, this
5    is for "record keeping and documentation purposes," and there is no mention of litigation
6    purposes. *Id.* at 2. The Court finds that the dual purposes of operational safety and anticipation of
7    litigation are not so "profoundly interconnected" that it can be said the documents were created
8    "because of" the litigation. *See In re Grand Jury Subpoena*, 357 F.3d at 908.

9    Further, the record reveals that the documents at issue would have been created in
10   "essentially similar form irrespective of the litigation," which goes against a finding of work
11   product privilege. *See Arfa*, 2014 WL 815496, at *4 (quoting *Umpqua Bank*, 2011 WL 997212, at
12   *4). The fact that the EIS process is overseen in some way by the General Counsel does not alter
13   the Court's view. For example, the testimony that Internal Incident Investigation Reports are sent
14   to outside counsel in the event that a litigation threat arises is apparently proffered to show its
15   connection with anticipated litigation. *See* Williamson Decl. ¶ 6. However, it actually reveals that
16   those reports are created in substantially the same form regardless of the specific threat of
17   litigation, and the reports are only sent to outside counsel if litigation actually becomes likely.

18   In short, the Court is not persuaded by Defendant's argument that the Incident Report, the
19   EIS Report, and the EIS Report Witness Statements are attorney work product. As to the Internal
20   Incident Investigation Report and the EIS Report, Defendant "fail[s] to show that the incident
21   reports at issue were prepared at the specific direction of counsel in anticipation of litigation rather
22   than pursuant to a general protocol or course of business established by defendant." *See Fisher*,
23   2012 WL 2377200, at *6. Defendant acted in the ordinary course of business when it conducted
24   "an investigation for its own purposes" and "the resulting investigative report is produceable
25   [sic]." *Bonneau*, 2010 WL 1254552, at *2 (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709
26   F.2d 1109, 1119 (7th Cir. 1983)) (some citations omitted). *See also Caremark*, 195 F.R.D. at 614
27   ("investigative reports developed in the ordinary course of business" are not work product).
28   As to the EIS Report Witness Statements, all three witnesses testified that it was standard

6

1   operating procedure to fill out the EIS Report Witness Statements, and that they were not
2   specifically instructed to do so by the General Counsel. *See* Dep. of Mark LaCroix at 26:9–10,
3   27:3–6; Dep. of Don Nichols at 22:15–16, 23:4–7; Dep. of Eric Partika at 38:8–12, 40:8–12.
4   These statements were filled out shortly after the incident "independently by witnesses" and, in
5   contrast to "interview notes prepared by counsel," they "neither reflect an attorney's evaluation of
6   the case nor constitute derivative material, and therefore are neither absolute nor qualified work
7   product." *Fisher*, 2012 WL 2377200, at *6 (quoting *Nacht & Lewis Architects, Inc. v. Superior
8   Court*, 47 Cal. App. 4th 214, 218 (1996)).
9       Defendant cites several cases in support of its argument that courts have allowed similar
10  materials to be remain protected by the work product privilege. *See id.* at 2–5. However, these
11  cases are not persuasive.
12      Defendant cites *Bonneau v. F & S Marine, Inc.*, CIV.A. 09-3336, 2010 WL 1254552 (E.D.
13  La. Mar. 25, 2010), in which the court found that certain materials withheld by defendant maritime
14  company in a Jones Act case were protected by the work-product doctrine. The plaintiff argued
15  that the materials had been prepared in the ordinary course of business and thus were discoverable,
16  but the court disagreed. *See id.* at *3. *Bonneau* is distinguishable from the instant case because in
17  that case, there were concrete indications that litigation was imminent before many of the
18  materials were prepared, *i.e.*, the defendant believed a rumor that plaintiff had retained counsel
19  shortly after the accident, and the rumor was confirmed when defendant received a letter regarding
20  a change of counsel. *See id.* Here, the materials were prepared in the ordinary course of business
21  immediately after the accident, before any concrete indications of litigation occurred. *See* Privilege
22  Log (indicating that disputed documents regarding the September 5, 2011 accident were prepared
23  on September 5, 6, and 8, 2011). In fact, *Bonneau* disavows the very type of automatic application
24  of privilege that Defendant urges here. Specifically, the court explained that "[t]he fact that a
25  defendant anticipates litigation resulting from an incident does not automatically insulate
26  investigative reports and the like from discovery as work-product" and "[t]he mere contingency
27  that litigation may result is not determinative." *See id.* at *2 (quoting *Wikel v. Wal-Mart Stores,
28  Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000); *Binks*, 709 F.2d at 1119) (some citations omitted).

1  Defendant cites *Brooks v. Mon River Towing, Inc.*, CIV.A. 11-1580, 2013 WL 1748334
2  (W.D. Pa. Apr. 3, 2013), *report and recommendation adopted*, CIV.A. 11-1580, 2013 WL
3  1748231 (W.D. Pa. Apr. 23, 2013), in which the court found that some documents withheld by
4  defendant maritime company in a Jones Act case were protected by the work product doctrine.
5  The court, in making this finding, considered the defendant's testimony that a possibility of
6  litigation arises any time that an injury occurs. *See id.* at \*4. However, this case provides only
7  limited support for Defendant's position, because the court found that "most of the documents in
8  question seemed to have been prepared in the ordinary course of business of evaluating
9  [p]laintiff's injury, determining if he had a claim, and deciding when and if he could return to
10 work" and were thus not protected. *See id.* Further, a review of the court's document-by-document
11 ruling reveals that all of the documents at issue in that case were e-mails, and none were company-
12 required reports such as those at issue here. *See id.*, Attachment A.
13 Defendant cites *Soltani-Rastegar v. Superior Court*, 208 Cal. App. 3d 424 (1989), in which
14 the court held that statements given to an insurance claims representative after an automobile
15 accident were privileged because they were made in anticipation of litigation, even though
16 attorneys had not been retained and litigation had not commenced. The case analyzed the attorney-
17 client privilege, not the work product privilege. Nonetheless, it is factually distinguishable. In
18 *Soltani-Rastegar*, the court made an express finding based on declarations in the record that the
19 defendants' statements had been given to the insurance representative for the sole purpose of
20 defending against claims. *Id.* at 426. The court explained that "[t]he fact that litigation was only a
21 threat on the horizon and that attorneys had not yet been selected to try to avert or meet that threat
22 does not convert the purpose of the transmission." *Id.* at 428. That is, the sole purpose of the
23 statements—defending against litigation—could not be negated by the fact that litigation had not
24 commenced.
25 Here, in contrast, the Incident Report, EIS Report, and EIS Report Witness Statements
26 were created for the *dual* purposes of litigation and operational safety. To the extent that these
27 documents were created for a litigation purpose, the Court agrees that the litigation purpose is not
28 negated by the fact that the documents were created before actual litigation commenced. *See id.*

8

However, as discussed above, the Court finds that the operational safety purpose for the documents is the "true independent purpose" that eclipses any litigation purpose. Considering the totality of the circumstances, the Court finds that the disputed documents were not generated "because of" litigation, and the guidance in *Soltani-Rastegar* does not alter this conclusion.

Defendant cites *Payless Drug Stores, Inc. v. Superior Court*, 54 Cal. App. 3d 988, 991 (1976), in which the court denied the production of an accident report on a pre-printed form prepared by an employee of the defendant's store where the plaintiff injured herself, because the defendant's insurer required such reports, both the defendant and the insurer intended the report to be confidential, and the reports were transmitted by the insurer to the attorney for his use in litigation of the case. The court found that evidence that the "report in question was prepared by an employee of the corporate employer on the date of the accident on a preprinted form furnished by the insurance carrier headed 'Public Liability Accident–Report Every Accident Immediately to Harbor Insurance Company' [wa]s sufficient to establish the dominant purpose." *Id.* The court noted that "[n]o other purpose was shown." *Id.* The case analyzed the attorney-client privilege, not the work product privilege. Nonetheless, it is factually distinguishable.

Here, Defendant argues that its Claims Department is like an insurer, designed to handle and investigate personal injury and property damage incidents. *See* Def.'s Br. at 4. Defendant also apparently has an actual insurer, Marine Assurance Group, which "may be assigned to oversee and assist with all investigations." *See* SMS Manual at 3. However, there is no indication that Marine Assurance Group was involved in the creation of any of the documents at issue here. Further, Defendant has provided no evidence that the pre-printed forms were required by any insurer or that they were intended to be confidential; the most that can be said is that once the witness fills out the statement, he is not provided with a copy. *See* Williamson Decl. ¶ 5. There is also no indication the pre-printed forms themselves contain any language regarding the fact that they are confidential or prepared in anticipation of litigation. While the party seeking production in *Payless* was not able to show any purpose for the pre-printed forms other than a litigation purpose, it is apparent in this case that the documents at issue have dual purposes. As discussed above, the Court finds that, under the totality of the circumstances, the disputed documents here were

prepared in the ordinary course of business pursuant to the EIS process, which was established by Defendant for the main purpose of fostering operational safety. *See also Fisher*, 2012 WL 2377200, at *5 (distinguishing *Payless* and finding that employee report prepared after slip-and-fall accident on pre-printed form was not protected by attorney-client or work product privilege).

Defendant cites *Royal Caribbean Cruises, Ltd. v. Doe*, 964 So. 2d 713, 716 (Fla. Dist. Ct. App. 2007), in which the court limited the scope of discovery to records pertaining to a particular crewmember who was alleged to have assaulted a cruise ship passenger. The court found that the original request, which had sought records pertaining to all past assault incidents that involved any crewmember, was overbroad.[1] *See id.* at 719. In the course of its ruling, the court also appears to have concluded that records pertaining to other crewmembers were protected by the work product privilege because after every incident, defendant's employees would prepare an incident report, which would be forwarded to the risk management department "for further handling and use in connection with the anticipated defense of any claim which arises from said incident." *See id.* at 718. However, the court did not provide any substantial citation to authority or analysis on this issue. To the extent that *Royal Caribbean* stands for the proposition that such an internal policy is sufficient to establish the existence of anticipated litigation, the Court declines to follow it.

### 2. Substantial need

Even if the Court were to find that the disputed materials qualified as work product, they would qualify as ordinary work product only, not opinion work product, and Plaintiff has demonstrated the requisite substantial need. Although Defendant asserts that "the investigation reports are completed by Foss's regional risk managers and require the risk manager to assess the cause of the incident and suggest corrective actions," and "the witness statement forms require the employees to comment on training and preparation issues that might have led to the incident," this does not indicate the existence of an attorney's private impressions, opinions, or theories that the heightened work product privilege is intended to protect. *See* Def.'s Br. at 7–8; *Fisher*, 2012 WL 2377200, at *6 n.4 ("Because the incident reports clearly do not contain attorney mental

---

[1] This case was subsequently disapproved of by *Bd. of Trustees of Internal Improvement Trust Fund v. Am. Educ. Enterprises, LLC*, 99 So. 3d 450 (Fla. 2012) because of its overbroadness ruling.

impressions, conclusions, opinions, or legal theories, defendant cannot plausibly contend that they constitute absolute work product.").

Plaintiff demonstrates a substantial need for the material in light of the fact that witnesses do not recall any details of the incident or the contents of the EIS Report Witness Statements, nor did they review their statements before being deposed. *See* Dep. of Mark LaCroix at 27:14–28:6; Dep. of Don Nichols at 23:21–24:2; Dep. of Eric Partika at 40:20–41:5. Defendant's arguments that Plaintiff has failed to show substantial need are not persuasive. Specifically, Defendant argues that Plaintiff's alleged accident itself was unwitnessed, the depositions of the crewmembers who were present have already been taken, an incident report submitted to the Coast Guard and a Lessons Learned analysis has already been produced, and Plaintiff engaged in forum-shopping. *See* Def.'s Br. at 6. Defendant appears to argue that Plaintiff has enough information to prosecute its case.

A finding of substantial need here is consistent with other cases involving similar circumstances. *See, e.g.*, *Fisher*, 2012 WL 2377200, at *6 (finding substantial need where slip-and-fall plaintiff had amnesia and plaintiff's counsel was unable to obtain information by other means, such as by deposition of assistant store manager who did not recall the incident or nor did she recall preparing a report regarding the incident); *United States v. Murphy Cook & Co.*, 52 F.R.D. 363, 364 (E.D. Pa. 1971) (citing *Hanover Shoe, Inc. v. United Shoe Machinery Corporation*, 207 F. Supp. 407, 409–11 (M.D. Pa. 1962)) (finding substantial need for witness statements made to defendant's insurer where witnesses, upon interrogatories, did not recall any facts of value to the investigation; reasoning that "[t]here is no doubt that production of a statement should be ordered if a witness has a faulty memory and can no longer relate details of the event.").

///
///
///
///
///

### III. CONCLUSION

For the reasons explained above, Defendant has failed to meet its burden to show that the Incident Investigation Report, the EIS Report, and the EIS Report Witness Statements are attorney work product, and Defendant must be produce these documents within seven days of this Order.

**IT IS SO ORDERED.**

Dated: April 10, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge